United States District Court

For the Northern District of California

1          IN THE UNITED STATES DISTRICT COURT

2        FOR THE NORTHERN DISTRICT OF CALIFORNIA

3

| | |
|---|---|
| DERON PIERRE KINCAID, | )   No. C 07-00608 SBA (pr) |
| Petitioner, | ) |
| | )   **ORDER DENYING PETITION FOR** |
| v. | )   **WRIT OF HABEAS CORPUS** |
| | ) |
| DAVID L. RUNNELS, Warden, | ) |
| | ) |
| Respondent. | ) |
| ———————————————————— | ) |

## INTRODUCTION

This matter is now before the Court for consideration of Petitioner's <u>pro se</u> petition for a writ of habeas corpus under 28 U.S.C. § 2254 concerning his 2000 conviction in the Alameda County Superior Court. Respondent Warden David Runnels opposes the petition. Petitioner has filed a traverse. For the reasons discussed below, the petition is DENIED as to all claims.

## BACKGROUND

### I.  Case History

In 2003, an Alameda Superior Court jury convicted Petitioner of first degree murder with a special circumstance, being a felon in possession of a firearm, and assault with a deadly weapon. (Ans., Ex. C3 at 1.) The trial court sentenced Petitioner to a term of life in state prison without the possibility of parole. (<u>Id.</u>) Petitioner appealed. The California Court of Appeal for the First Appellate District affirmed Petitioner's conviction. (<u>Id.</u>) The California Supreme Court denied his petition for review. (<u>Id.</u>, Ex. D2.) Petitioner then filed state habeas habeas petitions, later denied, in the California superior, appellate, and supreme courts. (<u>Id.</u>, Exs. E & F.)

Petitioner filed the instant petition in 2006. The matter has been fully briefed and is now ready for review on the merits.

### II.  Facts

The state appellate court summarized the facts of the case as follows:

[Petitioner's crimes were committed against Arthur Young and Marvin Thomas.] On July 15, 1999, Arthur Young was shot three times in his knee and thigh as he changed

a tire on his cousin's car on 60th Street.  In his trial testimony and in a statement to police on August 3, 2000, [Petitioner] admitted that he shot Young in July 1999, and also admitted taking Young's sweater with $200 in it.  [Petitioner] told police that he shot Young for "disrespecting" his family and because Young had stolen money from Curtis Hill, a gang associate of [Petitioner's] who had been robbed and killed on June 21, 1999.  [Petitioner] denied intending to kill Young.

At about 11:00 p.m. on January 2, 2000, Marvin Thomas, age 20, was sitting in his car with his friend, Lloyd Williams, at the intersection of 74th and Hillside in Oakland.  Williams saw another car, a brownish or bronze newer "rental car," come down 74th and stop just before the intersection with Hillside. . . A male, later identified as [Petitioner], emerged from the rear passenger seat of the car and approached Thomas's car holding some kind of assault gun.  As [Petitioner] approached, Thomas opened the driver's side door of his car, put his left leg out of the car, and started to get out of the vehicle.  [Petitioner] knocked the door back against Thomas forcing Thomas back into his seat.  [Petitioner] then cocked his weapon and fired five or six shots into Thomas. . .Thomas died within a few minutes from multiple gunshot wounds.

(Ans., Ex. C3 at 1-2.)

## DISCUSSION

### I.    Standard of Review

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a district court may grant a petition challenging a state conviction or sentence on the basis of a claim that was "adjudicated on the merits" in state court only if the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  A state court has "adjudicated" a petitioner's constitutional claim "on the merits" for purposes of § 2254(d) when it has decided the petitioner's right to post-conviction relief on the basis of the substance of the constitutional claim advanced, rather than denying the claim on the basis of a procedural or other rule precluding state court review on the merits.  Lambert v. Blodgett, 393 F.3d 943, 969 (9th Cir. 2004).  It is error for a federal court to review de novo a claim that was adjudicated on the merits in state court.  See Price v. Vincent, 538 U.S. 634, 638-43 (2003).

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

1    Habeas relief is warranted only if the constitutional error at issue is structural error or had a

2  "'substantial and injurious effect or influence in determining [the] jury's verdict.'"  Penry v. Johnson,

3  532 U.S. 782, 795-96 (2001) (quoting Brecht v. Abrahamson, 507 U.S. 619, 638 (1993)); see, e.g.,

4  DePetris v. Kuykendall, 239 F.3d 1057, 1061 (9th Cir. 2001) (exclusion of evidence was an

5  unreasonable application of federal law and had a substantial and injurious effect on verdict).

6    **A.    Section 2254(d)(1)**

7    Challenges to purely legal questions resolved by a state court are reviewed under

8  § 2254(d)(1), under which a state prisoner may obtain habeas relief with respect to a claim

9  adjudicated on the merits in state court only if the state court adjudication resulted in a decision that

10  was "contrary to" or "involved an unreasonable application of clearly established Federal law, as

11  determined by the Supreme Court of the United States."  Williams v. Taylor, 529 U.S. 362, 402-04,

12  409 (2000).  While the "contrary to" and "unreasonable application" clauses have independent

13  meaning, see id. at 404-05, they often overlap, which may necessitate examining a petitioner's

14  allegations against both standards, see Van Tran v. Lindsey, 212 F.3d 1143, 1149-50 (9th Cir. 2000),

15  overruled on other grounds, Lockyer v. Andrade, 538 U.S. 63, 70-73 (2003).

16    **1.    Clearly Established Federal Law**

17    "Clearly established federal law, as determined by the Supreme Court of the United States"

18  refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of

19  the relevant state-court decision."  Williams, 529 U.S. at 412.  "Section 2254(d)(1) restricts the

20  source of clearly established law to [the Supreme] Court's jurisprudence."  Id.  "A federal court may

21  not overrule a state court for simply holding a view different from its own, when the precedent from

22  [the Supreme] Court is, at best, ambiguous."  Mitchell v. Esparza, 540 U.S. 12, 17 (2003).  If there is

23  no Supreme Court precedent that controls on the legal issue raised by a petitioner in state court, the

24  state court's decision cannot be contrary to, or an unreasonable application of, clearly-established

25  federal law.  See, e.g., Stevenson v. Lewis, 384 F.3d 1069, 1071 (9th Cir. 2004).

26

27    The fact that Supreme Court law sets forth a fact-intensive inquiry to determine whether

28  constitutional rights were violated "obviates neither the clarity of the rule nor the extent to which the

United States District Court

For the Northern District of California

rule must be seen as 'established'" by the Supreme Court.  Williams, 529 U.S. at 391.  There are, however, areas in which the Supreme Court has not established a clear or consistent path for courts to follow in determining whether a particular event violates a constitutional right; in such an area, it may be that only the general principle can be regarded as "clearly established."  Andrade, 538 U.S. at 64-65.  When only the general principle is clearly established, it is the only law amenable to the "contrary to" or "unreasonable application of" framework.  See id. at 73.

Circuit decisions may still be relevant as persuasive authority to determine whether a particular state court holding is an "unreasonable application" of Supreme Court precedent or to assess what law is "clearly established."  Clark v. Murphy, 331 F.3d 1062, 1070-71 (9th Cir.), cert. denied, 540 U.S. 968 (2003); Duhaime v. Ducharme, 200 F.3d 597, 600 (9th Cir. 1999).

### 2.      "Contrary to"

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  Williams, 529 U.S. at 413.  A "run-of-the-mill state-court decision" that correctly identifies the controlling Supreme Court framework and applies it to the facts of a prisoner's case "would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause."  Williams, 529 U.S. at 406.  Such a case should be analyzed under the "unreasonable application" prong of § 2254(d).  See Weighall v. Middle, 215 F.3d 1058, 1062 (9th Cir. 2000).

### 3.      "Unreasonable Application"

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Williams, 529 U.S. at 412-13.

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 411; accord Middleton v. McNeil, 541 U.S. 433, 436 (2004) (per curiam) (challenge to state court's application

4

**United States District Court**
For the Northern District of California

1  of governing federal law must be not only erroneous, but objectively unreasonable); Woodford v.

2  Visciotti, 537 U.S. 19, 25 (2002) (per curiam) ("unreasonable" application of law is not equivalent to

3  "incorrect" application of law).

4          Evaluating whether a rule application was unreasonable requires considering the relevant

5  rule's specificity; if a legal rule is specific, the range of reasonable judgment may be narrow; if it is

6  more general, the state courts have more leeway.  Yarborough v. Alvarado, 541 U.S. 652, 664

7  (2004).  Whether the state court's decision was unreasonable must be assessed in light of the record

8  that court had before it.  Holland v. Jackson, 542 U.S. 649, 651 (2004) (per curiam).

9          The objectively unreasonable standard is not a clear error standard.  Andrade, 538 U.S. at 75-

10  76 (rejecting Van Tran's use of "clear error" standard); Clark, 331 F.3d at 1067-69 (acknowledging

11  the overruling of Van Tran on this point).  After Andrade,

12          [T]he writ may not issue simply because, in our determination, a state court's
13          application of federal law was erroneous, clearly or otherwise.  While the
            "objectively unreasonable" standard is not self-explanatory, at a minimum it denotes
14          a greater degree of deference to the state courts than [the Ninth Circuit] ha[s]
            previously afforded them.
15
16  Id.  In examining whether the state court decision was unreasonable, the inquiry may require

17  analysis of the state court's method as well as its result.  Nunes v. Mueller, 350 F.3d 1045, 1054 (9th

18  Cir. 2003).

19          **B.      Sections 2254(d)(2), 2254(e)(1)**

20          A federal habeas court may grant a writ if it concludes a state court's adjudication of a claim

21  "resulted in a decision that was based on an unreasonable determination of the facts in light of the

22  evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  An unreasonable

23  determination of the facts occurs where a state court fails to consider and weigh highly probative,

24  relevant evidence, central to a petitioner's claim, that was properly presented and made part of the

25  state court record.  Taylor v. Maddox, 366 F.3d 992, 1005 (9th Cir. 2004).  A district court must

26  presume correct any determination of a factual issue made by a state court unless a petitioner rebuts

27  the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

28          Section 2254(d)(2) applies to an intrinsic review of a state court's fact-finding process, or

5

United States District Court
For the Northern District of California

1  situations in which the petitioner challenges a state court's fact-findings based entirely on the state

2  court record, whereas § 2254(e)(1) applies to challenges based on extrinsic evidence, or evidence

3  presented for the first time in federal court. See Taylor v. Maddox, 366 F.3d 992, 999-1000 (9th Cir.

4  2004). In Taylor, the Ninth Circuit established a two-part analysis under §§ 2254(d)(2) and

5  2254(e)(1). Id. First, federal courts must undertake an "intrinsic review" of a state court's fact-

6  finding process under the "unreasonable determination" clause of § 2254(d)(2). Id. at 1000. The

7  intrinsic review requires federal courts to examine the state court's fact-finding process, not its

8  findings. Id. Once a state court's fact-finding process survives this intrinsic review, the second part

9  of the analysis begins by dressing the state court finding in a presumption of correctness under

10  § 2254(e)(1). Id. According to the AEDPA, this presumption means that the state court's fact-

11  finding may be overturned based on new evidence presented by a petitioner for the first time in

12  federal court only if such new evidence amounts to clear and convincing proof a state court finding

13  is in error. See 28 U.S.C. § 2254(e)(1). "Significantly, the presumption of correctness and the

14  clear-and-convincing standard of proof only come into play once the state court's fact-findings

15  survive any intrinsic challenge; they do not apply to a challenge that is governed by the deference

16  implicit in the 'unreasonable determination' standard of section 2254(d)(2)." Taylor, 366 F.2d at

17  1000. If constitutional error is found, habeas relief is warranted only if the error had a "'substantial

18  and injurious effect or influence in determining [the] jury's verdict." Penry, 532 U.S. at 795 (quoting

19  Brecht, 507 U.S. at 638).

20

21  **II.    Exhaustion**

22      Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings

23  either the fact or length of their confinement are required first to exhaust state judicial remedies,

24  either on direct appeal or through state collateral proceedings, by presenting the highest state court

25  available with a fair opportunity to rule on the merits of each and every claim they seek to raise in

26  federal court. See 28 U.S.C. § 2254(b), (c); Granberry v. Greer, 481 U.S. 129, 133-34 (1987).

27  Where, as here, the highest state court to reach the merits issued a summary opinion which does not

28  explain the rationale of its decision, federal court review under § 2254(d) is of the last state court

1    opinion to reach the merits.  Bains v. Cambra, 204 F.3d 964, 970-71, 973-78 (9th Cir. 2000).  In this

2    case, the last state court opinion to address the merits of Petitioner's claim is the reasoned opinion of

3    the state appellate court.

4    **III.    Legal Claims**

5          As grounds for federal habeas relief, petitioner alleges that (A) the trial court violated his

6    Fifth Amendment rights when it admitted evidence of his confessions; (B) the prosecutor failed to

7    disclose impeachment evidence, in violation of Petitioner's due process rights; (C) his appellate

8    counsel rendered ineffective assistance by failing to raise certain issues on appeal; and (D) the trial

9    court violated his Sixth Amendment rights by denying Petitioner's request to represent himself at

10   trial.  (Pet. at 6.)

11         **A.    Admission of Confession Evidence**

12         Petitioner claims that the trial court violated his rights by admitting his post-arrest statements

13   relating to the Thomas and Young shootings, all of which, he alleges, were taken in violation of his

14   Fifth Amendment rights, as they are articulated in Miranda v. Arizona, 384 U.S. 436 (1966).  (Pet. at

15   6-8, 15.)  The state appellate court stated that "[a]fter waiving his Miranda rights, [Petitioner] was

16   interrogated at length on August 3 and 4, concerning his possible involvement in or knowledge of

17   the Thomas murder, the Young shooting, and other crimes."  (Ans., Ex. C3 at 2.)  Petitioner

18   concedes that he waived his Miranda rights for interrogation about some crimes -- he was in fact

19   "Mirandized" at least five times (Ans., Ex. B1 at 10) -- but not for the interrogations regarding the

20   Thomas and Young shootings.  (Pet. at 15; Ans., Ex. B1 at 6.)  For example, Petitioner alleges that

21   six hours after his interrogation started, he was questioned again by two officers.  (Pet. at 15.)

22   Though he concedes that one of these officers, Koppenhavor, did read Petitioner his Miranda rights

23   before interrogating him, Petitioner claims that under the totality of the circumstances, no

24   "intervening event" occurred to cure the illegality of the interrogation process.  (Id.)  Petitioner

25   contends that the trial court should have suppressed the confession, and the fruits derived thereof.

26   (Id.)  The Court notes that before the first interrogation and Petitioner's first waiver, the investigating

27

28

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1   officer stated that they were going to ask Petitioner about "some incidents," that is, more than one.

2   (Ans., Ex. B1 at 12-13.)  The state appellate court apparently did not rule on this claim, though the

3   opinion states as fact that Petitioner "waiv[ed] his Miranda rights."  (Ans., Ex. C3 at 2.)

4          Under Miranda, a person subjected to custodial interrogation must be advised that he has the

5   right to remain silent, that statements made can be used against him, and that he has the right to

6   counsel.  384 U.S. at 444.  These warnings must precede any custodial interrogation, which occurs

7   whenever law enforcement officers question a person after taking that person into custody or

8   otherwise significantly deprive a person of freedom of action.  Id.  When a person subject

9   undergoing custodial interrogation waives his Miranda rights, he has waived them as to any topics,

10  unless he indicates that his waiver was limited.  See Shriner v. Wainright, 715 F.2d 1452, 1455 (11th

11  Cir. 1983).

12         Applying these legal principles to the instant matter, the Court finds that Petitioner's claim is

13  without merit.  The record shows that Petitioner made a valid oral and written waiver of his Miranda

14  rights before any interrogation started, a fact petitioner concedes.  There is nothing in the record to

15  suggest that Petitioner limited his waiver to certain topics.  In fact, Petitioner was informed before he

16  gave his waiver that the interrogation would cover more than one incident.  Furthermore, the record

17  indicates that Petitioner understood his Fifth Amendment rights, and therefore knew that he could

18  exercise them at any time to terminate an interrogation.  Based on this record, Petitioner's claim that

19  his Fifth Amendment rights were violated, and that his confession and its fruits should have been

20  suppressed, is without merit.  Accordingly, Petitioner's claim is denied.

21

22         **B.     Alleged Prosecutorial Misconduct**

23         Petitioner claims that the prosecutor withheld evidence that would have impeached the

24  prosecutor's witnesses, in violation of his right to due process as that right is articulated in Brady v.

25  Maryland, 373 U.S. 83 (1963).  (Pet. at 6, 16.)  More specifically, Petitioner contends that the

26  prosecutor failed to inform the defense about "implied" offers of leniency or immunity the

27  prosecutor allegedly made to two of his witnesses, Brown and McCauley.  Brown and McCauley

28  testified that they had seen Petitioner with a gun near the crime scenes on the night of shootings,

8

United States District Court

For the Northern District of California

1  and, according to Brown, shoot Thomas.  Id.  The state appellate court apparently did not rule on this

2  claim.

3       The facts underlying Petitioner's claim are as follows.  Defense counsel made a motion for a

4  new trial on the ground that Brown and McCauley may have received beneficial treatment, or the

5  promise of beneficial treatment from the prosecutor in exchange for their testimony.[1]  (Ans., Ex. A,

6  Vol. 3 at 848.)  The prosecutor opposed Petitioner's motion, stating that the jury had been informed

7  that the two witnesses testified at trial about their probationary status and prior and pending felony

8  cases.  (Id., Ex. A, Vol. 2 at 528.)  The trial court denied Petitioner's motion, finding that it did not

9  "see any of the information you have set forth would be in any way material on the subject of the

10  credibility of these two [witnesses] in light of all the other information that did come in about them."

11  (Id., Ex. B9 at 36.)  The trial court also pointed out that the jury had heard about the witnesses'

12  criminal "liabilities," including that McCauley had yet to be sentenced on an unrelated criminal

13  conviction, and therefore the jury knew that the witnesses had "great incentive to cooperate with [the

14  prosecution] to avoid any incarceration."  (Id. at 34-35; Ex. B8, Vol. 8 at 824-28; Ex. B8, Vol. 9 at

15  962.)

16       Upon a request by a criminal defendant, the government has an obligation to surrender

17  favorable evidence that is "material either to guilt or to punishment."  Brady v. Maryland, 373 U.S.

18  83, 87 (1963).  Put differently, to establish a Brady violation, the defendant must show that

19  exculpatory or impeaching evidence was suppressed by the state, either willfully or inadvertently,

20  resulting in prejudice.  Morris v. Ylst, 447 F.3d 735, 741 (9th Cir. 2006).  "[E]vidence is material

21  only if there is a reasonable probability that, had the evidence been disclosed to the defense, the

22  result of the proceeding would have been different.  A 'reasonable probability' is a probability

23  sufficient to undermine confidence in the outcome."  United States v. Bagley, 473 U.S. 667, 682

24  (1985) (plurality opinion); accord id. at 685 (White, J., concurring).  The prosecution must disclose

25

26

27       [1] Defense counsel had made a motion in limine to exclude identification evidence provided
28  by Brown and McCauley on the grounds that "said evidence was elicited from prospective witnesses
. . . through impermissible coercion."  (Ans., Ex. A at 849.)

9

United States District Court
For the Northern District of California

1   to the defense a government agreement with a witness that may motivate the witness to testify and

2   that may affect the outcome of the trial. Giglio v. United States, 405 U.S. 150, 154-55 (1972). To

3   prevail on a claim that the prosecution suppressed evidence of such a deal, petitioner must first

4   demonstrate the existence of an agreement between the government and the witness. See Williams

5   v. Woodford, 384 F.3d 567, 597 (9th Cir. 2004). When the government relies on a criminal

6   informant, it must disclose "all information bearing on the witness's credibility," including his

7   criminal record "and any information therein which bears on credibility." Belmontes v. Brown, 414

8   F.3d 1094, 1113 (9th Cir. 2005) (overruled on other grounds by Ayers v. Belmontes, 549 U.S. 7, 127

9   (9th Cir. 2006)).

10          Petitioner's claim is without merit. First, Brady requires that the prosecution have suppressed

11   evidence. There is no evidence to support such an assertion. Rather, the record shows that the

12   defense and the jury were informed of the two witnesses' criminal liabilities. From this evidence, the

13   defense was free to cross-examine the witnesses on this subject, and the jury was free to infer that

14   the witnesses were motivated to testify by the hope of leniency. The trial court's instruction on

15   witness credibility (CAL JIC No. 2.20) would have aided the jury in making such an inference, if the

16   evidence so led it: "In determining the believability of a witness you may consider . . . [t]he

17   existence or nonexistence of a bias, interest, or other motive." (Ans., Ex. A, Vol. 3 at 733.) Second,

18   there is no evidence in the record that the prosecutor gave the two witnesses any leniency or

19   promises of leniency in exchange for their testimony. In his new trial motion, defense counsel

20   discussed how Brown's and McCauley's criminal liabilities were disposed of, but defense counsel

21   failed to show there, as Petitioner fails to do here, a direct, as opposed to an inferential, evidentiary

22   connection between the two. Based on this record, and considering all these factors, Petitioner's

23   claim is denied.

24   

25          **C.      Effectiveness of Appellate Counsel**

26          Petitioner contends that his appellate counsel rendered ineffective assistance by failing to

27   raise on appeal his Miranda and Brady claims, the merits of which are discussed above. (Pet. at 6.)

28          Claims of ineffective assistance of appellate counsel are reviewed according to the standard

1  set out in Strickland v. Washington, 466 U.S. 668 (1984).  Miller v. Keeney, 882 F.2d 1428, 1433

2  (9th Cir. 1989); United States v. Birtle, 792 F.2d 846, 847 (9th Cir. 1986).  A defendant therefore

3  must show that counsel's advice fell below an objective standard of reasonableness and that there is a

4  reasonable probability that, but for counsel's unprofessional errors, he would have prevailed on

5  appeal.  Miller, 882 F.2d at 1434 & n.9 (citing Strickland, 466 U.S. at 688, 694; Birtle, 792 F.2d at

6  849).

7      Applying these legal principles to the instant matter, the Court finds that Petitioner's claim is

8  without merit.  As discussed above, the Court has found that Petitioner's Miranda and Brady claims

9  are without merit.  Because these claims are without merit, appellate counsel's failure to present

10  them on appeal cannot constitute a deficient performance.  Because Petitioner has failed to show that

11  appellate counsel's performance was deficient, the Court need not address Strickland's prejudice

12  prong.  See Siripongs v. Calderon, 133 F.3d 732, 737 (9th Cir. 1998).

13      **D.      Self-Representation**

14      Petitioner contends that the trial court violated his Sixth Amendment right to self-

15  representation, as that right is established in Faretta v. California, 422 U.S. 806 (1975).  (Pet. at 11.)

16  Petitioner asserts that he made his Faretta request six days before jury selection, thirteen days before

17  the jury was sworn, and fourteen days before the first witness was sworn.  (Id.)  The Court notes,

18  however, that Petitioner withdrew his Faretta request before the trial court ruled on the motion.

19  (Ans., Ex. C3 at 3.)  The state appellate court, finding that the trial had started when jury selection

20  began, ruled that Petitioner's motion was untimely.  (Id. at 5.)

21

22      The facts underlying Petitioner's claim were summarized by the state appellate court as

23  follows:

24      On October 15, [Petitioner's] counsel advised the court that [Petitioner] "has
    expressed to me just now for the first time in the course of my representation of him

25      the desire to exercise his right under the Sixth Amendment of the Constitution to
    represent himself in this case."  A hearing was held outside the presence of the

26      prosecution.  The trial court asked [Petitioner], "[A]re you prepared to go forward
    today representing yourself?"  [Petitioner] responded that he would need some time.

27      The trial court stated that he would not grant [Petitioner] any continuance, explaining:
    "Because we're in trial.  We've litigated some motions, I have jurors coming in on

28      Monday morning, the D.A. is ready to go, the D.A. has lined up his witnesses."  In

11

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

response, [Petitioner] described various investigatory leads that he believed his attorney had failed to follow through on in preparation for trial.  After permitting [Petitioner] and his counsel to address the status of these matters, the court stated: "Well, frankly, I haven't heard anything that deserves my continuing this case, so I'm not inclined to do that.  If you want to represent yourself, you have a right to do that." [Petitioner] complained that it was not fair to deny him time to get prepared, and stated, "I guess you can just exclude the request then."

On Monday, October 21, 2002, 125 jurors were sworn in as prospective trial jurors.  The jury and alternates were selected on October 24 and 25, and were sworn in as jurors on October 28.  Opening statements began on October 28.  The first witness was called on October 29.

(Ans., Ex. C3 at 3.)

A criminal defendant has a Sixth Amendment right to self-representation.  Faretta, 422 U.S. at 832.  A defendant's request to represent himself must, however, be made in timely fashion; "a timeliness element in a Faretta request is clearly established federal law as determined by the Supreme Court."  Marshall v. Taylor, 395 F.3d 1058, 1061 (9th Cir. 2005) (internal quotation and citation omitted).  "[B]ecause the Supreme Court has not clearly established when a Faretta request is untimely," however, "other courts are free to do so as long as their standards comport with the Supreme Court's holding that a request 'weeks before trial' is timely."  Id.  The California Supreme Court has held that a Faretta request must be made "within a reasonable amount of time prior to the commencement of trial."  See People v. Windham, 19 Cal. 3d 121, 127-28 (1977).  In Marshall, the defendant had made his Faretta request on the morning of trial.  Marshall, 395 F. 3d at 1061.  The Ninth Circuit found no constitutional error in the state court's denial of the request.  See id. ("Because the timing of [petitioner's] request fell well inside the 'weeks before trial' standard for timeliness established by Faretta, the [California] court of appeal's finding of untimeliness clearly comports with Supreme Court precedent.").  In so holding, the Ninth Circuit further observed that the petitioner had "presented no facts to show that his last-minute request was reasonable," and that "he could have made his request much earlier than the day of trial."  Id. at 1061.

Though the Ninth Circuit has established a bright-line rule for the timeliness of Faretta requests -- a request is timely if made before the jury is empaneled, unless it is shown to be a tactic to secure delay -- it has not applied this rule as "clearly established" Supreme Court law for purposes of 28 U.S.C. § 2254(d).  See Moore v. Calderon, 108 F.3d 261, 265 (9th Cir. 1997); Marshall, 395

F.3d at 1062 (state court's determination that petitioner's <u>Faretta</u> request made on the day of trial, but before jury selection, was untimely, was not "contrary to" clearly established federal law under 28 U.S.C. § 2254(d)).

Applying these legal principles to the instant matter, the Court finds that Petitioner's claim herein is unavailing for two reasons.  First, petitioner withdrew his <u>Faretta</u> request.  By withdrawing his motion, the trial court could not rule on Petitioner's request, and therefore could not have denied Petitioner his rights.  Second, the Court cannot say that the state appellate court's finding that the Faretta motion was untimely was a constitutional error.  As the above-cited standards indicate, when a <u>Faretta</u> motion is timely is unclear.  A <u>Faretta</u> motion made on the day of trial is almost certainly untimely, while one made several weeks before trial may be timely.  Within those limits, legal precedent is unclear.  Because the standard is unclear, this Court cannot say that the state court's ruling was clearly contrary to, or an unreasonable application of, Supreme Court precedent.  Furthermore, at best Petitioner's motion was made fourteen days before trial -- if one regards when the first witness was sworn as the start of trial -- which does not meet the several weeks standard <u>Faretta</u> itself established.  At worst, petitioner made his <u>Faretta</u> request six days before trial -- if one regards jury selection as the start of trial -- which, under the above-cited standards, is certainly untimely.  For these reasons, Petitioner's claim is denied.

## VI.     CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED as to all claims.  The Clerk of the Court shall enter judgment, terminate all pending motions, and close the file.

IT IS SO ORDERED.

DATED: 1/30/09

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge

P:\PRO-SE\SBA\HC.07\Kincaid0608.DenyPet.md.frm     13

**United States District Court**
For the Northern District of California

1

2

3   UNITED STATES DISTRICT COURT

4   FOR THE

5   NORTHERN DISTRICT OF CALIFORNIA

6

7

8   DERON PIERRE KINCAID,                          Case Number: CV07-00608 SBA

9            Plaintiff,                            **CERTIFICATE OF SERVICE**

10       v.

11  DAVID L. RUNNELS et al,

12           Defendant.

13  _____/

14
    I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District
15  Court, Northern District of California.

16  That on February 4, 2009, I SERVED a true and correct copy(ies) of the attached, by placing said
    copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said
17  envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle
    located in the Clerk's office.
18

19

20

21  Deron P Kincaid V01249
    New Folsom State Prison
22  B5-240-Up
    P.O. Box 29-0066
23  Represa,  CA 95671-0066

24  Dated: February 4, 2009
                                         Richard W. Wieking, Clerk
25                                       By: LISA R CLARK, Deputy Clerk

26

27

28

    P:\PRO-SE\SBA\HC.07\Kincaid0608.DenyPet.md.frm          14